IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

HARSHAL TRIVEDI,
GAYATRI TRIVEDI,  and
DILIP TRIVEDI,

       Plaintiffs

v.                                                   **4:23-cv-53**

TREY MINOR,
JACOB CAMPBELL,
TULL MALONE,
BRANDON BRYANT,
DOUG ALLEN,
BRIAN JENKINS,
FREDDIE ARNOLD,
DAVID HOUK,
JOHNATHAN ALLEN,  and
LINCOLN COUNTY, TENNESSE,

       Defendants

---

## COMPLAINT

---

The Plaintiffs, Harshal Trivedi, Gayatri Trivedi, and Dilip Trivedi, hereby bring suit against the Defendants as follows:

## <u>INTRODUCTION</u>

1) This case involves various constitutional violations carried out by Lincoln County officers against an Indian family in retaliation for their speech, and based on hostility against their race.

## THE PARTIES

2)   Plaintiff HARSHAL TRIVEDI is a private citizen, of Indian descent, residing in Lincoln County, Tennessee. He lives and works at his parents' motel in said county, the Budget Inn.

3)   Plaintiffs GAYATRI and DILIP TRIVEDI are private citizens of Lincoln County, also of Indian descent. They also live at the motel and, through a corporation, own said property. GAYATRI is HARSHAL's mother. DILIP is HARSHAL's father.

4)   Defendant TREY MINOR is a Sheriff's Deputy with the Lincoln County Sheriff's Department. But to be clear, he is being sued in his individual capacity.

5)   Defendant JACOB CAMPBELL is another Deputy with the Lincoln County Sheriff's Department. He is sued in his individual capacity.

6)   Defendant TULL MALONE is another Deputy with the Lincoln County Sheriff's Department. He is sued in his individual capacity.

7)   Defendant BRANDON BRYANT is another Deputy with the Lincoln County Sheriff's Department. He is sued in his individual capacity.

8)   Defendant DOUG ALLEN is another Deputy with the Lincoln County Sheriff's Department. He is sued in his individual capacity.

9)   Defendant BRIAN JENKINS is another Deputy with the Lincoln County Sheriff's Department. He is sued in his individual capacity.

2

10)    Defendant FREDDIE ARNOLD is another Deputy with the Lincoln County Sheriff's Department. He is sued in his individual capacity.

11)    Defendant DAVID HOUK is another Deputy with the Lincoln County Sheriff's Department. He is sued in his individual capacity.

12)    Defendant JOHNATHAN ALLEN is another Deputy with the Lincoln County Sheriff's Department. He is sued in his individual capacity.

13)    LINCOLN COUNTY, TENNESSEE is a political subdivision of the State of Tennessee. Among other functions, it runs the Lincoln County Sheriff's Department.

## FACTUAL BACKGROUND

### *Incident on September 3, 2022*

14)    On September 3, 2022, Plaintiff HARSHAL TRIVEDI was experiencing problems with two customers at the motel where he works and resides, the Budget Inn in Lincoln County, Tennessee. Specifically, two customers had stayed past the normal checkout time. To be courteous, though, HARSHAL TRIVEDI granted them an additional hour to check out.

15)    Nonetheless, when he checked back on the situation at the extended checkout time, TRIVEDI noticed that the male customer had indeed left as agreed, but that the female customer was still staying in the room. Worse yet, she was refusing to leave.

3

16)     With great reluctance — because he knows that the police only tend to make things worse — HARSHAL TRIVEDI eventually called the police to deal with the trespasser at his family business.

17)     Two men from the Lincoln County Sheriff's Department responded: Deputy BRIAN JENKINS, and another officer not named in this lawsuit.

18)     Unfortunately, while waiting on the police to arrive, a random male busybody (from among the other motel customers) saw HARSHAL TRIVEDI arguing with the woman. The random male busybody began to argue with TRIVEDI, sticking up for the trespasser. Some harsh words were exchanged, but TRIVEDI told the man to mind his own business. The argument died down.

19)     The two Sheriffs deputies then arrived and began interacting with the female trespasser. By the time they arrived, she had at least stepped out of the room — finally — but was still refusing to leave the motel grounds.

20)     Initially, the deputies did not appear to be arresting her, or doing much of substance. The confrontation began to drag out.

21)     As things drug out at a slow pace, the same male busybody came back and began yelling again at HARSHAL TRIVEDI again. This time, he voiced a threat of physical harm at TRIVEDI, and he even swung at TRIVEDI.

22)     In response to the whole situation, TRIVEDI became angry. In a somewhat demanding tone, he told the police to arrest the man for assaulting him. Then he called the woman a "stupid bitch," telling her to leave his property.

4

23)     Although TRIVEDI was being a bit harsh, his language was constitutionally protected speech.

24)     In response to the speech, Deputy BRIAN JENKINS said, "Watch your mouth."

25)     TRIVEDI then said to the officers, "Get her off my property."

26)     JENKINS then threatened that if TRIVEDI did not watch his language, he was going to arrest him for Disorderly Conduct.

27)     TRIVEDI responded that he could speak the way he wanted, especially on his own property.

28)     But JENKINS shouted, "I don't give a fuck about your property," and he began walking over to TRIVEDI.

29)     To get away from the aggressive police officer, TRIVEDI quickly retreated into the motel's office and locked the door.

30)     Defendant JENKINS attempted to follow and break into the motel's office, whose door was labeled "Private," to arrest TRIVEDI for his speech. But he was unable to penetrate the locked door.

31)     JENKINS then announced loudly to everyone nearby that if anyone attempted to burn the motel down, the police would do nothing to help the TRIVEDIS any longer.

32)     This comment about fire was a reference to a prior incident, where a customer had indeed set one of the rooms on fire.

5

33)     As JENKINS began to leave the scene, TRIVEDI then said to him through a glass screen that it was he — the police officer — who was the true criminal.

34)     JENKINS walked back over to TRIVEDI and asked him, "What did you say to me?"

35)     But at this point, HARSHAL TRIVEDI meekly responded that he had not said anything.

36)     Finally, Defendant JENKINS and the other officer stepped back outside. They called for backup, whereupon multiple police came and camped out at the hotel for the better part of an hour.

37)     Eventually, though, the police left. As compensation for being called a "bitch" by TRIVEDI, the police gave the female trespasser a free ride to wherever she wanted.

38)     Nothing more came of this incident — at least not until another incident, three months later, involving multiple other officers from the same department.

39)     On December 2, 2022, HARSHAL TRIVEDI was again working at the motel. His mother GAYATRI was also present at the motel that day. His father DILIP was out of the country.

40)     Around the middle of the day, HARSHAL TRIVEDI observed two men loitering on his property. (Supposedly, there was also a third man with them, but HARSHAL did not see him.) Of particular concern, these men had two vehicles parked near the front of the property, blocking the motel's main entrance. More than that, they were also were traversing the motel property and even going into the back yard area.

41)     The men were not motel customers. Further, TRIVEDI had no idea who they were. He was a bit suspicious simply at their presence.

42)     Stepping outside of the motel office, TRIVEDI called over to one of the men to ask what they were doing. He attempted to call out to the man for about a full minute or two, but rudely, the man simply ignored him. The total lack of communication made TRIVEDI more worried.

43)     Ultimately, TRIVEDI thus called out again and told the man to leave the property.

---

1   In 2023, December 2 fell on a Saturday. This Complaint is being filed on Monday December 4, 2023.

44)     Lincoln County has a reputation for being a community where a large segment of society carries firearms. Because TRIVEDI did not know if the suspicious men might be armed, he was afraid to approach.

45)     Further, because TRIVEDI knew better than to call the police in Lincoln County, he felt as though he needed to deal with the trespassers himself.

46)     Finally, when the men would not leave, TRIVEDI took matters into his own hands. The TRIVEDI family does not believe in weapons, and they did not have any available. But HARSHAL grabbed a letter-opener from the motel office and displayed it to one of the men — from a distance of perhaps 75 feet — again telling him to get lost. HARSHAL similarly displayed the letter opener to a second intruder who had been trespassing in the back yard area — again displaying it from a distance, and telling the man to leave.

47)     Around this same time, GAYATRI TRIVEDI was also attempting to go outside and interact with the intruders, trying to figure out why they had come. But she still could not get any answer.

48)     Ultimately, one of the men told her, "Don't worry, the police have already been called."

49)     Deputies TREY MINOR, JACOB CAMPBELL, TULL MALONE, and BRANDON BRYANT responded to the scene.

50) When they arrived, they did not investigate at all, except to enter the motel lobby and ask GAYATRI TRIVEDI where her husband was. She informed them that her husband, DILIP, was out of the country.

51) The Defendants did not have any search warrant or any arrest warrants for anyone at the motel.

52) Nor had they, by that point, even talked to any witnesses about what had supposedly happened.

53) But after hearing that the man they sought was not even in the country, Deputy MINOR forcefully pushed past GAYATRI and entered the motel's employee-only front office to look for him. The door was marked "Private."

54) After going past the first door, marked "Private," the four officers MINOR, CAMPBELL, MALONE, and BRYANT went through yet another door, also marked "Private." It led directly into the TRIVEDI residence.

55) After already intruding through that second door into the TRIVEDI home entryway, Deputy MINOR then proceeded further and opened a third door. As he did so, he drew his taser.

56) Immediately, after going through the third door, Defendant MINOR came across HARSHAL TRIVEDI, who lived there. He was standing in one of the bedrooms.

57) Without any warning and without provocation, Defendant MINOR immediately tased the first Indian man he saw — HARSHAL TRIVEDI.

9

58)     After tasing him once, and allowing the electricity to cease, MINOR then tased him again for good measure — without provocation.

59)     All in all, the two tasings lasted a total of about 30 to 60 seconds.

60)     As a result of the tasings, HARSHAL TRIVEDI experienced pain and suffering and emotional distress.

61)     Deputy CAMPBELL promptly told TRIVEDI, "That's what you get, sandnigger."

62)     Defendant MALONE promptly told his comrades, "Get her out here, too." At that point, GAYATRI TRIVEDI had been worried about the use of force against her son, and she walked over to make sure that he was okay. But in response to MALONE's command, CAMPBELL forcefully drug her out from her residence and then shoved her, causing her to fall onto the ground. Then he ordered her to stay down, and not move.

63)     While GAYATRI TRIVEDI was detained, MINOR hauled HARSHAL TRIVEDI out to the police car.

64)     Upon reaching the police car, Deputy MINOR slammed HARSHAL's head against the car.

65)     When arresting HARSHAL TRIVEDI, the officers never interviewed him — or anyone else — to verify that he was really the individual they were seeking (i.e., the same Indian man who had waved a knifelike object from a distance, while telling people to leave).

10

66)     Initially, the police were unsure about whether HARSHAL even needed to be charged with any crimes at all. But unwisely, HARSHAL commented to MINOR that he planned to contact his attorney about the police misconduct.

67)     In response to the threat of possible legal action, MINOR decided to charge HARSHAL TRIVEDI criminally.

68)     He promptly went out and tried to gather some probable cause. Namely, he interviewed the men who had intruded on the property, hearing their story that an Indian man had displayed some sort of knifelike object from a distance, telling them to leave.

69)     Around this same time, CAMPBELL and MALONE went back inside the residence — again without any warrant, consent, or exigency — to search for the letter opener. After sifting through the TRIVEDIS' belongings, eventually they found the item. They seized it for evidence.

70)     Medical personnel arrived at the scene and removed the taser barbs from TRIVEDI's flesh.

71)     By this point, Deputy MINOR had returned to the police car. After the medical personnel walked away, MINOR slammed handcuffs onto HARSHAL as tightly and forcefully as he could, with deliberate indifference to the detainee's welfare.

72)     As a result of the harsh handcuffing, HARSHAL experienced pain, suffering, and emotional distress, as well as bruising to his wrists.

11

73) HARSHAL then asked MINOR why he was being arrested. MINOR would not tell him any actual criminal allegations. MINOR just said, "Because you wanted to speak to a lawyer."

74) MINOR then took HARSHAL TRIVEDI to jail.

75) Among other things, he decided to charge TRIVEDI with Resisting Arrest.

76) In an attempt to justify the charge of resisting arrest, he falsely swore in the affidavit that HARSHAL TRIVEDI had "ignored verbal commands and bec[o]me combative."

77) MINOR was aware that ignoring verbal commands and becoming "combative" do not actually constitute resisting arrest under Tennessee law, anyway. *See* Tenn. Code Ann. § 39-16-602 (Requiring actual use of force against the officer).

78) Nonetheless, based on the allegation, a warrant for Resisting Arrest issued.

79) Once they were at the jail, MINOR also decided to enlist the help of another officer to charge TRIVEDI with a felony.

80) To charge someone with Assault by fear, one needed element is that the perpetrator must have caused fear of "imminent" bodily injury.

12

81) MINOR and all the other officers knew that no one was threatened with anything imminent, simply by having a letter opener (or "knife") waved from a distance of 75 feet or so, while being told to leave.

82) Moreover, even if all the elements had indeed been satisfied, MINOR and the other officers knew full well that any property owner generally has the right to instruct people to leave his property, and that he may lawfully threaten the use of force against trespassers who refuse. *See* Tenn. Code Ann. §§ 39-11-614 and -615.

83) Nonetheless, MINOR conspired with another officer, Defendant DOUG ALLEN, to charge TRIVEDI with three counts of Aggravated Assault, based on the knife display. Namely, they took out three because purportedly three men were scared by the knifelike object (not just two).

84) Both MINOR and ALLEN knew that TRIVEDI was innocent, or at least they were reckless about it. (ALLEN was not even at the scene, and he had no personal knowledge about what he was even swearing.)[2]

85) Nonetheless, they took out the charges specifically to make it more difficult for TRIVEDI to hold the police accountable for the home invasion and the assaults, namely by miring him in legal trouble.

86) For the Aggravated Assault warrants, ALLEN actually signed them himself (in his own name), all while listing MINOR as an affiant. However, the

_____

2 The Plaintiffs are unsure of why exactly MINOR felt the need to get another officer involved. He could have simply sworn to all the warrants himself.

written allegations were effectively the same as for the warrant for Resisting Arrest, which MINOR had personally signed as affiant.

87)    In taking out the warrant, MINOR and ALLEN then falsely alleged that the three complainants had identified HARSHAL as the perpetrator, when really they had not.

88)    The officers falsely said that HARSHAL had threatened to slit the men's throats, when really the three men (upon information and belief) had not made such allegation.

89)    Finally, in taking out the warrant, MINOR and ALLEN fabricated an allegation that HARSHAL threatened to shoot the three men, when really the men (upon information and belief) had not made such allegation, either. In fact, no one even alleges that HARSHAL had a gun.

90)    Once the arrest warrants were issued, TRIVEDI was jailed for roughly 11 hours before making bail.


### *Incident on December 4, 2022*

91)    On December 4, 2022, Deputy BRIAN JENKINS, along with his fellow officer, Defendant FREDDIE ARNOLD, conspired to retaliate against HARSHAL TRIVEDI for the harsh words spoken to Deputy JENKINS — and the female trespasser — months earlier on September 3, 2022.

14

92)    On information and belief, they were also motivated to help TREY MINOR and the other officers escape justice for the wrongful conduct two days earlier. In other words, they simply wanted to mire HARSHAL TRIVEDI in further legal trouble.

93)    Hence, JENKINS and ARNOLD collaborated together to take out warrants against HARSHAL for Disorderly Conduct and Resisting Arrest. They did so by having ARNOLD sign his own name to the warrants, all while listing JENKINS as affiant.

94)    The resulting Disorderly Conduct affidavit read as follows:

> THE DEFENDANT DID VIOLATE T.C.A. 39-17-305 BY CAUSING A DISTURBANCE WHILE DEPUTIES WERE INVESTIGATING THE CALL THE DEFENDANT CALLED IN. THE DEFENDANT WAS YELLING AND CURSING AT DEPUTIES AND CUSTOMERS AFTER BEING ASKED TO STOP. THE DISTURBANCE HAPPENED IN THE PARKING LOT OF BUDGET INN AND IN THE VIEW OF THE PUBLIC ON HUNTSVILLE HWY.
>
> THIS DID HAPPEN IN LINCOLN COUNTY.

95)    In reality, HARSHAL TRIVEDI had not cussed at any deputies. In fact, he had not even cussed at *anyone* — unless calling the trespasser woman a "stupid bitch," on one occasion, counts as cussing.

96)    The Resisting Arrest affidavit read as follows:

15

THE DEFENDANT DID VIOLATE T.C.A. 39-16-602 BY NOT OBEYING THE LAWFUL COMMAND TO STOP BY DEPUTIES AS HE RAN INTO THE OFFICE IF THE BUDGET INN AND LOCKED HIMSELF IN THE OFFICE REFUSING TO COME OUT. THE DEFENDANT DID FLEE OUT THE BACKDOOR OF THE BUILDING TO AVOID DEPUTIES.

THIS DID HAPPEN IN LINCOLN COUNTY.

97) Both warrants were defective on their face, for lack of probable cause, because (a) the written allegations did not even correspond to the elements of either Disorderly Conduct or Resisting Arrest, and (b) neither affidavit provided any basis of knowledge whatsoever, as required by *Giordenello v. United States*, 357 U.S. 480 (1958).

98) Nonetheless, armed with the two warrants, Deputy MINOR went back to the motel, taking ARNOLD with him. He also enlisted Deputies JOHNATHAN ALLEN and DAVID HOUK. All four officers then arrested HARSHAL TRIVEDI again.

99) Defendants DOE and ROE specifically took TRIVEDI to jail.

100) As a result, TRIVEDI was again held in jail before ultimately making bail.

## *Other Miscellaneous Allegations*

101) As a result of the wrongs alleged herein, the Plaintiffs have all experienced pain, suffering, emotional distress, loss of enjoyment of life, and/or injury to reputation. They have also incurred legal fees, bond fees, and missed work.

16

102) All the wrongs alleged herein were committed intentionally, maliciously, or wantonly, deserving of punitive damages.

103) At all times relevant, the Defendants were acting under color of law, either as law enforcement officers or as government entities.

104) The Plaintiffs, as people of Indian race or ethnicity, are members of a protected class.

## CLAIMS FOR RELIEF

## COUNT I

## UNREASONABLE SEARCH AND SEIZURE

## 42 U.S.C. § 1983

### *(By all Plaintiffs, against*
### *Minor, Campbell, Malone, Bryant, and Lincoln County)*

105) The other sections are hereby incorporated by reference.

106) On December 2, 2022, by entering the Plaintiffs' business (the private office) and residence (the corridors and rooms behind the office) without any warrant or any valid exception, Defendants TREY MINOR, JACOB CAMPBELL, TULL MALONE, and BRANDON BRYANT violated the right of all three Plaintiffs to be free from unreasonable searches as guaranteed by the Fourth Amendment. They did so under color of law.

107) By tasing HARSHALL TRIVEDI, and later by slamming him into the police car, and later by placing his handcuffs on too tightly and too forcefully,

17

Defendant MINOR used excessive force in violation of the Fourth Amendment. He did so under color of law.

108)   By shoving GAYATRI TRIVEDI to the floor, Defendant CAMPBELL used excessive force in violation of the Fourth Amendment. He did so under color of law.

109)   By putting GAYATRI TRIVEDI on the floor and detaining her without probable cause, reasonable suspicion, or any other valid grounds, Defendants MALONE and CAMPBELL further committed an unreasonable seizure in violation of the Fourth Amendment. They did so under color of law.

110)   By arresting HARSHALL TRIVEDI from inside his home without a warrant (and also without probable cause), Defendants MINOR and CAMPBELL carried out a false arrest in violation of the Fourth Amendment. They did so under color of law.

111)   LINCOLN COUNTY, TENNESSEE is also culpable for all of these wrongs because it failed to train and supervise its officers. Further, on information and belief, it has no policy against intruding into businesses or homes without a warrant to carry out routine arrests, but instead authorizes such illegal practices.

18

## COUNT II

## ABRIDGING THE FREEDOM OF SPEECH
## AND/OR RIGHT TO PETITION

## 42 U.S.C. § 1983

### *(By Harshal Trivedi, against*
### *Minor, Doug Allen, and Lincoln County)*

112)    The other sections are incorporated by reference.

113)    On December 2, 2022, by swearing out (and/or conspiring to swear out) arrest warrants against HARSHAL TRIVEDI in retaliation for his statement that he would contact his lawyer about the wrongful conduct — retaliation capable of deterring a person of ordinary firmness from speaking — Defendants TREY MINOR and DOUG ALLEN abridged his freedom of speech and/or his right to petition the government for redress of grievances. Said conduct violated the First Amendment. The Defendants carried out such conduct under color of law.

114)    LINCOLN COUNTY, TENNESSEE is also culpable for the above violation because it failed to train and supervise its officers.

# COUNT III

## EQUAL PROTECTION VIOLATION

### 42 U.S.C. § 1983

*(By Harshal and Gayatri Trivedi, against
Minor, Campbell, and Lincoln County)*

115)   The other sections are incorporated by reference.

116)   By invading the home of HARSHAL and GAYATRI TRIVEDI, using aggressive force upon them and arresting or detaining them, motivated by animus against their race or ethnicity, Defendants TREY MINOR and JACOB CAMPBELL violated their right to the equal protection as guaranteed by the Fourteenth Amendment. These Defendants did so under color of law.

117)   LINCOLN COUNTY, TENNESSEE is also culpable for the above violation because it failed to train and supervise its officers.

## COUNT IV

## EQUAL PROTECTION VIOLATION

### 42 U.S.C. § 1982

*(By all Plaintiffs, against
Minor, Campbell, Jenkins, Arnold, and Lincoln County)*

118)   The other sections are incorporated by reference.

119)   By discriminating against all three Plaintiffs on the basis of race or ethnicity in their exercise of the right to hold real property, namely by retaliating against them when they attempt to expel trespassers, Defendants TREY MINOR, JACOB CAMPBELL, BRIAN JENKINS, and FREDDIE ARNOLD violated the Plaintiffs' right to the equal protection of law as guaranteed by 42 U.S.C. 1982 and the Fourteenth Amendment.

120)   LINCOLN COUNTY, TENNESSEE is also culpable for the above violation because it failed to train and supervise its officers.

## COUNT V

## ABRIDGING THE FREEDOM OF SPEECH

### 42 U.S.C. § 1983

### *(By Harshal Trivedi, against*
### *Jenkins, Arnold, Minor, Houk, Johnathan Allen, and Lincoln County)*

121) The other sections are incorporated by reference.

122) By initiating criminal charges and arrest against HARSHAL TRIVEDI (harm that would deter a person of ordinary firmness), and by doing so in retaliation for cussing at a female, for speaking in a slightly harsh manner to a police officer, and for calling the same police officer a criminal, Defendants BRIAN JENKINS, FREDDIE ARNOLD, TREY MINOR, DAVID HOUK, and JOHNATHAN ALLEN abridged his freedom of speech in violation of the First Amendment. They did so under color of law.

123) LINCOLN COUNTY, TENNESSEE is also culpable for the above violation because it failed to train and supervise its officers.

22

## COUNT VI

## UNREASONABLE SEARCH AND SEIZURE

### 42 U.S.C. § 1983

*(By Harshal Trivedi, against*
*Jenkins, Arnold, Minor, Houk, Johnathan Allen, and Lincoln County)*

124) The other sections are incorporated by reference.

125) By arresting (and/or conspiring to arrest) HARSHAL TRIVEDI on December 4, 2022 in his home, with a facially defective warrant and without probable cause, Defendants BRIAN JENKINS, FREDDIE ARNOLD, TREY MINOR, DAVID HOUK, and JOHNATHAN ALLEN carried out a false arrest in violation of the Fourth Amendment. They did so under color of law.

126) LINCOLN COUNTY, TENNESSEE is also culpable for the above violation because it failed to train and supervise its officers, and also because it has a widespread custom with the force of law of initiating facially defective arrest warrants that fail to meet the standard of probable cause.

23

## COUNT VII

## FALSE ARREST

### Tennessee Common Law

#### *(By Harshal Trivedi, against Jenkins, Arnold, Minor, Houk, and Johnathan Allen)*

127)    The other sections are incorporated by reference.

128)    By arresting (or conspiring to arrest) HARSHAL TRIVEDI without probable cause on December 4, 2022, Defendants BRIAN JENKINS, FREDDIE ARNOLD, TREY MINOR, DAVID HOUK, and JOHNATHAN ALLEN committed false arrest in violation of the Tennessee common law.

129)    Similarly, by arresting him on December 4, 2022 without a valid warrant, all for alleged misdemeanors not committed in their presence, Defendants ARNOLD, MINOR, HOUK, and ALLEN committed false arrest in violation of the Tennessee common law. *See* Tenn. Code Ann. § 40-7-103.

## JURISDICTION

130)    This federal District Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the Complaint raises federal questions, and under 28 U.S.C. § 1367 for the related state claim.

131)    This Court in Tennessee has personal jurisdiction because the Defendants are all citizens of Tennessee, or else have sufficient contacts with Tennessee that traditional notions of fair play allow for jurisdiction here.

24

132) Venue is proper in the Eastern District of Tennessee, Winchester Division, because the incidents all happened in Lincoln County, Tennessee.

## RELIEF SOUGHT

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Harshal, Gayatri, and Dilip Trivedi pray for the following relief:

i) A jury trial;

ii) Compensatory damages of $3,000,000;

iii) Additional punitive damages of another $4,000,000 (sought only against the individual officers);

iv) Reasonable attorney's fees; and

v) Any further relief that the Court deems appropriate, such as taxing costs to the Defendants.

Respectfully submitted,

/s/ Drew Justice
Drew Justice #29247
Attorney for the Plaintiffs
1902 Cypress Drive
Murfreesboro, TN 37130
(615) 419-4994
drew@justicelawoffice.com

25